Upon review of all of the competent and convincing evidence of record with reference to the errors assigned, the undersigned find good ground to reconsider the evidence and upon reconsideration reverse the previous Opinion and Award and find and conclude as follows:
* * * * * * * * * * *
The following were entered into by the parties at the initial hearing before the Deputy Commissioner as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, the defendant-employer regularly employing three or more employees.
2. The employer-employee relationship existed between the plaintiff and the defendant-employer.
3. Wausaw Insurance Company is the compensation carrier on the risk.
4. The plaintiff's average weekly wage was $509.00, yielding a compensation rate of $339.75.
5. Plaintiff did not work for defendant from May 24, 1989 through October 31, 1989.
6. On December 21, 1990, the parties stipulated that the office notes of Dr. Ralph C. Toomis could be received in evidence and that if he testified, Dr. Toomis would express the opinion, based on reasonable medical certainty, that the injury he diagnosed and treated was caused by the events described in the history related in doctor's records; that the claimant (plaintiff) reached maximum medical improvement as of November 1, 1989; and further that as a result of his injuries and treatments, the claimant (plaintiff) was given a ten percent partial disability to the back, pursuant to the Workers' Compensation Act.
The deposition of Dr. Frank C. Morrison was taken by the parties on December 26, 1990. The transcript thereof is included in the record. Attached to the transcript as plaintiff's Exhibit #1 is a letter dated August 18, 1989, from Mary Bishop, Claims Adjuster for the defendant-carrier. Attached as plaintiff's Exhibit #2 is a letter from Dr. Morrison to defendant's counsel dated November 11, 1989. Attached as plaintiff's Exhibit #3 is medical history on the letterhead of Dr. Stewart J. Harley. Defendants' Exhibit #1 consists of office notes of Dr. Morrison dated April 24, May 19, and May 24, 1989 and April 28, 1990.
At the initial hearing, defendants' counsel stated that defendants were relying on the notice defense provided in N.C.G.S. § 97-22.
* * * * * * * * * * *
Based upon all of the competent, credible, and convincing evidence of record, the Full Commission make the following additional
FINDINGS OF FACT
1. On April of 1989, plaintiff had been an employee of defendant for about nine years, and at the time of the initial hearing was still employed there. In mid-April, he was employed in what was known as "final repair," which was essentially an inspector's job where he checked desks produced in defendant's plant before they went on to the shipping department. He "touched up" the desks, fixed anything wrong with them and pushed them onto the conveyor line to be shipped. When plaintiff inspected the desks, they came to him on pallets, which in turn were on a conveyor line. This conveyor line intersected the line going in the opposite direction to shipping in a T-shaped arrangement. One had to be careful, in pushing the desks from one line to the other, that the desks did not fall off the pallets. There was no power in the rollers on the "final repair" line.
2. On or about April 17, 1989, plaintiff was pushing a desk weighing 400 to 450 pounds when he felt a pull in the lower right side of his back, one to three inches above his belt line.
3. Plaintiff did not feel this pain in his back was serious enough to keep him from working, and he continued with his job. He did not feel it was serious enough to go to "medical." The next day he reported this episode to his supervisor, Jerry Logan. He told Logan that he believed he had pulled his back while pushing a desk, to which Logan replied, "Mine hurts too, but you're the only one that knows if it's bad enough to go to medical." Mr. Logan had been a supervisor for ten years and part of his job was to maintain a safe work environment, listen to reports of on-the-job injuries, and direct injured employees to the medical department.
4. When plaintiff came to work for defendant on July 13, 1981, and again on April 18, 1983, he had signed a document outlining procedures to follow when there was an on-the-job injury, including the requirement that employees were to report injuries to their supervisor and to the medical department immediately. Plaintiff followed these requirements sufficiently and substantially in reporting his injury to Logan on the day after his injury.
5. Jeff Laughter, a fellow employee of plaintiff, remembered that on a day in April of 1989, plaintiff came to him and told him that he (plaintiff) had pulled his back pushing a unit in line. At the hearing, Laughter could not remember the exact date this incident happened. His memory was refreshed at the hearing with the date of April 17, 1989. He had earlier identified the date as April 17, because he remembered that this happened two or three days before plaintiff told him he was seeing a doctor. Plaintiff saw his doctor on April 24, 1989.
6. On April 24, 1989 plaintiff's back condition had worsened sufficiently for him to see his physician, Dr. Morrison, a general practitioner. Dr. Morrison, upon examination, opined that plaintiff's deep tendon reflexes were present bilaterally and seemed normal. Dr. Morrison diagnosed his problem as back strain and prescribed medications.
7. Plaintiff's next visit to Dr. Morrison was May 19, 1989, by which time plaintiff's back pain was radiating down his right leg. The medicine had helped some, but the pain recurred when he finished it. Dr. Morrison ordered lumbosacral spine x-rays, which appeared normal. Dr. Morrison refilled plaintiff's prescriptions and said he would recommend an examination by an orthopedic doctor if plaintiff did not get better.
8. Plaintiff visited defendant's plant nurse, Faye Johnson, on May 22, 1989, with the same complaints he had reported to Dr. Morrison. She noted that his back condition had been "present for one plus month."
9. On May 24, plaintiff saw Dr. Morrison and was referred to Dr. Harley, an orthopedic surgeon. An appointment with Dr. Harley was arranged for May 30, 1989. Dr. Harley's record of examination for May 30 stated: "This 28-year-old man was working at Steelcase approximately a month ago, pushed a desk, and developed pain in the lower right back into his right leg." Plaintiff was diagnosed with a herniated disc which was surgically repaired by a neurosurgeon on August 24, 1989. Plaintiff was released to return to work on November 1, 1989, with a disability rating of 10% to the back.
10. Plaintiff's Form 18, dated June 10, 1989, and filed with the Industrial Commission June 15, listed April 17, 1989, as the date of his on-the-job injury. He stated that his disability began May 24.
11. On August 2, 1989, plaintiff told defendant-carrier's adjuster that after the desk pushing incident, which ruptured a disc, the pain got worse and worse.
12. Plaintiff's counsel entered his appearance in this case on October 17, 1989, after the defendant's denial of liability on the claim.
13. As a result of his work related back injury plaintiff was incapable of earning wages in any employment from May 24, 1989 through October 31, 1989.
14. Plaintiff's testimony concerning the time period, events and circumstances relating to his injury by specific traumatic incident is accepted as credible.
* * * * * * * * * * *
The foregoing findings of fact engender the following
CONCLUSIONS OF LAW
1. Plaintiff has proven by the greater weight of the evidence that he sustained a compensable injury to his back arising out of and in the course of his employment while pushing a heavy desk and that this injury was a result of a specific traumatic incident of the work assigned. Plaintiff's injury occurred on or about April 17, 1989 or during a legally cognizable period of time thereafter between April 17, 1989 through May 1, 1989.
2. Plaintiff orally reported the incident within a day to his supervisor and therefore there can be no prejudice claimed on behalf of defendants, and the undersigned find reasonable notice and excuse given such that defendants cannot succeed with a N.C.G.S. § 97-22 notice defense. First written notice came within a reasonable time in June of 1989.
3. As a result of a compensable injury to his back and resulting disability, plaintiff is entitled to temporary total disability compensation from May 24, 1989 through October 31, 1989 at the rate of $339.75 per week.
4. Plaintiff is entitled to permanent partial disability compensation at a stipulated compensation rate of $339.75 per week for a period of 30 weeks for the ten percent permanent partial impairment to his back.
5. Plaintiff is entitled to payment by defendants for all related medical expenses as are reasonably necessary to effect a cure, give relief or lessen the period of disability, once bills for the same have been submitted to the defendants and approved through procedures adopted by the Industrial Commission.
6. Plaintiff's counsel is entitled to a reasonable attorney's fee.
* * * * * * * * * * *
The foregoing stipulations, findings of fact, and conclusions of law engender the following
AWARD
1. Subject to attorneys fee, defendants shall pay to plaintiff temporary total disability compensation at the rate of $339.75 per week for the period from May 24, 1989 through October 31, 1989, subject to the attorney's fee provided below. Said compensation has accrued and shall be paid in one lump sum, uncommuted.
2. Defendants shall pay to plaintiff in one lump sum uncommuted 30 weeks of permanent partial disability compensation at the rate of $339.75 per week, subject to the attorney's fee provided below.
3. Defendants shall pay all related medical expenses incurred by plaintiff when bills for same have been submitted to defendants and approved through procedures adopted by the Industrial Commission.
4. A reasonable attorney's fee of twenty-five percent (25%), shall be deducted from the sums awarded plaintiff above and paid directly to plaintiff's counsel for legal services rendered.
5. Defendants shall bear the costs.
This the _____ day of __________________________, 1995.
 S/ __________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ___________________ THOMAS J. BOLCH COMMISSIONER
S/ ___________________ BERNADINE S. BALLANCE COMMISSIONER
JHB/cc/mj 11/14/95